```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                   FORT LAUDERDALE DIVISION
                  CASE NO. 0:16-cr-60353-BB-1
 3

 4   UNITED STATES OF AMERICA,

 5           Plaintiff,                    April 28, 2017
                                           2:14 p.m.
 6           vs.

 7   FREDY FERNANDO RUAS COLOBON,

 8           Defendants.                   Pages 1 THROUGH 24
     _____

 9

10                  TRANSCRIPT OF SENTENCING
             BEFORE THE HONORABLE BETH BLOOM
11               UNITED STATES DISTRICT JUDGE

12
     Appearances:
13
     FOR THE GOVERNMENT: UNITED STATES ATTORNEY'S OFFICE
14                       DONALD F. CHASE, AUSA
                         500 East Broward Boulevard, 7th Floor
15                       Fort Lauderdale, Florida 33394

16
     FOR THE DEFENDANT:  FEDERAL PUBLIC DEFENDER'S OFFICE
17                       MICHAEL DAVID SPIVACK, AFPD
                         One East Broward Boulevard, Suite 1100
18                       Fort Lauderdale, Florida 33301

19
     COURT REPORTER:     Yvette Hernandez
20                       U.S. District Court
                         400 North Miami Avenue, Room 10-2
21                       Miami, Florida 33128
                         yvette_hernandez@flsd.uscourts.gov
22

23

24

25
```

```
 1            (Call to order of the Court, 2:14 p.m.)

 2            COURTROOM DEPUTY:  Calling Case Number 16-60353

 3   Criminal, United States of America v. Fredy Fernando Ruas

 4   Colobon.

 5            Counsel, please state your appearances.

 6            MR. CHASE:  Good afternoon, Your Honor.  Don Chase,

 7   Assistant United States Attorney, on behalf of the United

 8   States of America.

 9            MR. SPIVACK:  Good afternoon, Your Honor.  Michael

10   Spivack, Assistant Federal Public Defender, on behalf of

11   Mr. Ruas Colobon, who is present before the Court for his

12   sentencing.

13            THE COURT:  Good afternoon to each of you.

14            May I have the name of the probation officer that's

15   present in the courtroom.

16            PROBATION OFFICER:  Good afternoon, Your Honor.

17   Demesha Edwards on behalf of US Probation.

18            THE COURT:  Good afternoon.  Go ahead and have seat,

19   please.

20            And Mr. Colobon, I see that you are wearing a

21   headpiece that allows you to hear the interpreter.  Is the

22   equipment properly, sir?

23            THE DEFENDANT:  (Through Interpreter.)  Yes.  Yes.

24            THE COURT:  If at any time, sir, the equipment stops

25   working, or you are unable to hear the interpreter, if you will
```

1    let me know.  All right, sir?

2              THE DEFENDANT:  Yes.  Thank you.

3              THE COURT:  And may I have the names of the

4    interpreters that are present in the courtroom.

5              THE INTERPRETER:  Victor De La Serra and Maria Kisic,

6    Your Honor.  Good afternoon.

7              THE COURT:  All right.  Good afternoon.  Is there a

8    stipulation regarding the qualifications of our interpreters?

9              MR. CHASE:  Yes, Your Honor.

10             MR. SPIVACK:  Yes, Your Honor.

11             THE COURT:  Mr. Colobon, as you know, the purpose of

12   this afternoon's proceeding is to determine an appropriate

13   sentence in your case, a sentence that is sufficient but is not

14   greater than necessary.

15             You were before this Court on February 21st of this

16   year.  At that time, you plead guilty to Count 1, which charged

17   you with conspiracy to possess with the intent to distribute

18   five kilograms or more of cocaine, while on board a vessel

19   subject to the jurisdiction of the United States, in violation

20   of 46, United States Code, Section 70506, Subsection B.

21             The Court has received and has reviewed, in

22   preparation for this afternoon, the following items, and I will

23   refer to each by docket entry, since each was filed for record:

24             Docket Entry 34 is your Factual Proffer Statement;

25   Docket Entry 35 is your Plea Agreement; Docket Entry 50 is the

 1   Draft Disclosure of the Presentence Investigation Report;

 2   Docket Entry 55 is a motion for a downward variance that was

 3   filed by Mr. Spivack on your behalf; Docket Entry 68 is a Final

 4   Addendum 1 Disclosure of the Presentence Investigation Report;

 5   Docket Entry 69 is a Notice of Filing for Consideration at

 6   Sentencing, and the Court received four pages that consist of

 7   eleven photographs; Docket Entry 71 is the Government's

 8   response opposing the Defendant's motion for a downward

 9   variance, and the Government has attached exhibits which are

10   photographs, as well as a handwritten paper that states that

11   they are GPS coordinates that were retrieved from your pocket;

12   Docket Entry 72 is a statement of safety valve that you have

13   authored and is the last filing before the Court.

14           Have you had a full opportunity to review each of

15   these documents with your attorney, Mr. Spivack?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you need any additional time,

18   Mr. Colobon?

19           THE DEFENDANT:  No.  No.

20           THE COURT:  And are there any additional documents

21   that the Court should have received and reviewed in preparation

22   for today, Mr. Spivack?

23           MR. SPIVACK:  No, Your Honor.

24           THE COURT:  Mr. Chase?

25           MR. CHASE:  No, Your Honor.

```
1              THE COURT:  And Mr. Spivack, is there any legal reason
2    why sentence should not be imposed today?
3              MR. SPIVACK:  No, Your Honor.
4              THE COURT:  Mr. Spivack, while you filed a motion for
5    a downward variance, I don't see any objections that were filed
6    to the accuracy of the Presentence Investigation Report or any
7    objections to the calculation of the advisory guidelines; is
8    that correct?
9              MR. SPIVACK:  Yes, Your Honor.
10             THE COURT:  Have you filed any objections, sir?
11             MR. SPIVACK:  No, Your Honor.
12             THE COURT:  And are there any objections to be made at
13   this time?
14             MR. SPIVACK:  No, Your Honor.
15             THE COURT:  Then the Court accepts the facts contained
16   in the Presentence Investigation Report, as well as the
17   calculation of the advisory guidelines, which reflect that
18   Mr. Colobon has a base offense level of 38, with a two-level
19   enhancement under 2D1.1(b)(3)(C).
20             Mr. Colobon is given a two-level acceptance of
21   responsibility -- or reduction based on his acceptance of
22   responsibility.  And Mr. Chase, is the Government moving for
23   the additional one-level decrease?
24             MR. CHASE:  Yes, we are, Your Honor.
25             THE COURT:  That would result in a total offense level
```

1  of 37.  Mr. Colobon has a criminal history category of 1,

2  placing Mr. Colobon in an advisory guideline range of 210 to

3  262 months; is that correct?

4          MR. CHASE:  Yes, Your Honor.

5          MR. SPIVACK:  Yes, Your Honor.

6          THE COURT:  In considering the 3553(a) factors, which

7  certainly the Court will consider as part of the Defendant's

8  motion for a downward variance, Mr. Colobon, if there is

9  anything that you would like to say directly to the Court,

10  certainly you may do so.

11          If there are individuals that are present on your

12  behalf that would like to speak, they may certainly do so.  And

13  I'm certain that Mr. Spivack will make argument on your behalf.

14          Mr. Spivack?

15          MR. SPIVACK:  Yes, Your Honor.

16          Your Honor, as to the -- in support of my -- our

17  motion for variance, Judge, I think what the Court -- we'd ask

18  the Court to take into account is, if you look at the

19  photographs we filed, those photographs are actually of my

20  client's home.  That's where he lives.  You can see the very,

21  very poor conditions that he lives now.  He grew up as very,

22  very poor.  That was laid out in the Presentence Investigation

23  Report.

24          The safety valve statement that we filed today, Judge,

25  I filed it because I wanted the Court to understand that my

1    client was going to be paid $3,800.  Now, the case involves 775

2    kilograms of cocaine.  That's before the cocaine has arrived

3    and has been, as they say in the drug trade, stepped on.  So

4    normally, the 775 kilograms would actually be more once it gets

5    to the street.  But let's work with the 775 kilograms right

6    now.

7          A street value of say $28,000 -- and I know this from

8    one of my most recent cases that I had within the last two

9    weeks.  That's basically the going rate right now, $28,000 for

10   a kilogram of cocaine.  That means that amount of cocaine was

11   over $21 million.  So the man had over $21 million on this

12   boat.  And I think you've seen pictures of the boat.  I mean,

13   it's literally a boat.  It's not one of these things where it

14   looks very safe to me anyway.  I wouldn't want to be out in the

15   ocean on it.

16         But in any event, Judge, you look at the photographs

17   of where my client lives and you look at the fact that this

18   boat has $21 million worth of cocaine on it, and you realize

19   that that $21 million worth of cocaine is not my client's.  All

20   right?  That really has nothing to do with my client.  My

21   client is a pimple on the body of this drug trade.  I mean,

22   that's what he is.

23         Your Honor has probably seen many of these cases

24   recently.  I know Mr. Chase has prosecuted many of these cases

25   recently.  I have handled many of these cases recently,

1   defended them.  It's the same MO.  Basically, what the

2   Colombians are doing now is they are going into Ecuador,

3   Honduras, these other countries that are very, very poor.

4   They're offering people like my client $3,800.  And if you

5   look, again, at my client's shack, to someone like my client,

6   $3,800 is just amazing.

7           So he knows he's going to be moving drugs.  You know,

8   he's not that stupid.  He gets on the boat.  He knows he was

9   smuggling it.  He gets caught and has to be punished.  And

10  there's a 10-year minimum mandatory in this case, Your Honor.

11  So that's an enormous amount of time, 10 years, to be in jail,

12  for someone who was going to make $3,800.

13          Now, I know the Government's response was:  "This is a

14  lot of cocaine."  And it is a lot of cocaine, but it's not my

15  client's cocaine.  He's not the one making the $21 million off

16  this cocaine, Judge.  He's making $3,800.  And I think we have

17  to look at the reality of what we're dealing with here.

18          This is sort of similar, Your Honor, to a few years

19  back, Your Honor may remember when we had the drug mules who

20  were coming in.  The Government was demanding minimum

21  mandatories on the drug mules and charging the minimum

22  mandatories.  And then eventually the Government realized that

23  wasn't really fair to these people, and all of a sudden they

24  stopped filing minimum mandatories on the drug mules, the

25  people who were getting caught at the airports.  They just

```
 1   stopped it doing it because they realized it wasn't fair to try

 2   and impose these kind of penalties on those people.

 3           And I think, Your Honor, to impose a sentence of 210

 4   months or more on my client would really be below unfair.  I

 5   mean, it would just be -- I mean, it would be horrible.  I

 6   mean, 10 years is enough, Judge.

 7           Thank you.

 8           THE COURT:  Mr. Spivack, is that what you're

 9   recommending to the Court?

10           MR. SPIVACK:  Yeah.  The 10-year -- that's what we

11   would ask, the 10-year the minimum mandatory, Judge.

12           THE COURT:  Thank you, Mr. Spivack.

13           Would Mr. Colobon wish to say anything to the Court?

14           MR. SPIVACK:  He wants to rely on my statements, Your

15   Honor.  Thank you very much.

16           THE COURT:  And the issue with regard to the safety

17   valve statement is ...

18           MR. SPIVACK:  That really is a non-issue, Your Honor.

19   I -- what happened, Your Honor, was, to be quite honest, I

20   forgot why I hadn't filed it.  I hadn't filed it because he

21   told the Coast Guard people that he was in charge of the boat,

22   and therefore he was a supervisor, and therefore he's not

23   entitled to safety valve.  So safety valve is not an issue,

24   Judge.

25           THE COURT:  Thank you, sir.
```

1           Mr. Chase?

2           MR. CHASE:  Judge, some of the reasons given by

3   Mr. Spivack to support his request for a downward variance, the

4   Government would adopt to oppose the request for a downward

5   variance.  Judge, the cocaine was not his, but he was

6   transporting it.  He was the captain of the vessel.  He was the

7   person who was moving 755 kilograms or 1,661 pounds of cocaine

8   for distribution.  As Mr. Spivack says, that amount of cocaine

9   likely would have been doubled, maybe even tripled, because it

10  would have been stepped on before distribution in the streets.

11  So when you're looking at a cost of $21 million, that's

12  wholesale, Judge, before distribution on the street in retail

13  in smaller quantities.

14          And Judge, when you look at the $3,800, and you

15  compare that to his economic circumstances, he risks limb,

16  life, and liberty, for $3,800.  What, Judge, would he do for

17  5,000?  What will he do for 10,000?  What would he do for

18  15,000?

19          Judge, when you look and hear these stories about how

20  somebody's offered money and they accept it, the bottom line,

21  Judge, is they sold their soul.  They didn't have the moral

22  character to say no.  They took the easy way out.

23          And in this case, Judge, when you look at it, the easy

24  way out is 60 percent more in weight of cocaine than the

25  highest figure used on the drug table.  The highest figure used

1    on the drug table is 450 kilograms.  In this case, you have 755

2    kilograms.

3           Mr. Spivack is asking you to punish his client for the

4    equivalent of five kilograms.  The difference is 750 kilograms,

5    Judge.  You cannot treat somebody who has eleven pounds of

6    cocaine the same as somebody who has 1,661 pounds of cocaine.

7           And then, Judge, his argument is further exacerbated

8    by the fact that he doesn't even rationalize to this Court why

9    the captain of the vessel should receive a sentence of 120

10   months when a crew member received 135 months.  The weight

11   alone, Judge, justifies the denial of a downward variance.  But

12   you have the captain here who's requesting a sentence of 120

13   months, when somebody who was a subordinate crew member of his

14   received a sentence from this Court of 135 months, when you

15   denied his request for downward variance on the same grounds

16   and the same arguments that are being made today.

17          The months seem to be quite a lot in comparison

18   between two defendants, Judge.  But in actuality, it's about

19   four levels.  You look at the fact that he's denied a safety

20   valve of two levels and he's given a captain enhancement of two

21   levels, Judge, when you're a leader/organizer of a crime that

22   involves more than five people -- we had four people on the

23   boat.  We had somebody supply the cocaine.  We had somebody who

24   was going to receive the cocaine.  More than likely, based upon

25   the GPS coordinates in this man's pocket, it was going to be

1    transferred at sea to another vessel.  But I know there was

2    somebody who provided the cocaine.  I know there was somebody

3    that was going to receive the cocaine.  And I know there were

4    four people on board the boat.  That's six.  Under the

5    guidelines, without the captain enhancement, he could have been

6    subjected to a three or four-level enhancement, Judge.  So when

7    you compare what he's being penalized for compared to the crew

8    member Mendoza Sanchez that two weeks ago received a sentence

9    of 135 months, this is proportional.

10           And finally, Judge, let's remember why we have

11   sentencing guidelines.  Uniformity.  Mr. Spivack is asking you

12   to ignore provisions of the sentencing guidelines that Congress

13   has implemented.  Just ignore the captain enhancement, Judge.

14   Don't penalize him for that.  Just ignore the weight.  The fact

15   that we are probably eight to 10 levels above in the drug table

16   that 120 months would justify, just ignore that.  Just ignore

17   the fact that he doesn't qualify for a safety valve and give

18   him the bare minimum possible.

19           Forty-three percent reduction he's asking, Judge, for

20   doing nothing.  He's the one defendant out of four in this

21   case, Judge, who was never debriefed by law enforcement.  He's

22   the one Defendant out of four that created a bogus story:  We

23   were hijacked at sea.  We were threatened.  Our families were

24   threatened.  We were told we had to change from our fishing

25   vessel to this 755 kilogram, 1,661-pound, loaded with cocaine

1   vehicle -- vessel to transport the cocaine somewhere else under

2   threat of death.

3        But he wants the barebones minimum.  He wants the

4   equivalent of five, instead of 755, kilogram penalty.  He wants

5   the equivalent of eleven pounds, instead of 1,661 pounds.  And

6   he wants less than a crew member.

7        Judge, remember why the sentencing guidelines were

8   enacted.  He's asking you to totally ignore them.  For that

9   reason, Judge, we would ask that you impose sentence at the low

10  end of the guidelines, a term of imprisonment of 210 months.

11       THE COURT:  Thank you, Mr. Chase.

12       Mr. Spivack, is there anything further, sir?

13       MR. SPIVACK:  Yes, Your Honor.

14       The problem with Mr. Chase's argument is he keeps on

15  making the mistake that the cocaine was my client's cocaine.  I

16  agree if my client had $21 million of cocaine, then Your Honor

17  should sentence him to the top of the guidelines.  It wasn't

18  his cocaine, and we all know that.  He didn't set up the

19  delivery system.  We all know that, too.  He didn't choose the

20  other people who were going to be on the boat.  We know that,

21  too.  It wasn't his boat.  We know that, too.  He had no idea

22  where the cocaine was going to delivered.  We know that, too.

23  He's a little tiny pebble on the beach of moving these drugs,

24  and we all know that.

25       Now, Mr. Chase ignores the fact that 10 years in

```
 1    prison is a very substantial penalty.  Ten years in prison is
 2    not a slap on the wrist.  I don't think I could last -- and I
 3    don't think Mr. Chase could last a day in prison.  And this
 4    man's going to be sentenced, even if we win, to 10 years in
 5    prison.
 6              Now, we showed you the pictures where the man lives.
 7    The Government hasn't disputed that, Your Honor.  So that's a
 8    fact now.  Look where he lives.  Look at where he comes from.
 9    And again, look at how much money he was supposed to make off
10    of this, $3,800.  And how can you really go home and feel
11    comfortable with:  Okay.  I gave him -- I guess Mr. Chase would
12    want, what, 20 years, maybe.  I don't know what Mr. Chase would
13    think would be fair.  Ten years is certainly sufficient
14    punishment, Your Honor.  And as Mr. Chase points out -- and we
15    have to go back to Congress and the 3553 factors.  The one that
16    stands out -- or the one principle that stands out from 3553 is
17    Your Honor is supposed to impose the least onerous sentence
18    that deals with all the issues, not the most.
19              There's nobody here -- Your Honor, nobody here
20    honestly believes if you gave this man, say, 15 years or 20
21    years, it would stop one person who comes from this kind of a
22    background, Judge, these kind of huts.  It's not going to stop
23    one person from taking that trip on the boat.  We all know it.
24              Thank you, Judge.
25              THE COURT:  Mr. Spivack, let me ask you, sir, in
```

```
 1    ensuring -- as one of the goals of sentencing is to impose a

 2    sentence that takes into account unwarranted sentencing

 3    disparities, what do you see is the difference between

 4    Mr. Colobon's actions and those of the three other individuals

 5    that were with him on the vessel?

 6              MR. SPIVACK:  Your Honor, I believe, quite frankly,

 7    all three of them are basically exactly the same because --

 8              THE COURT:  Well, all three of them perhaps may be.

 9    I'm speaking of the fourth one, Mr. Colobon's relationship as

10    the master of the vessel to the other three.

11              MR. SPIVACK:  Well, what I'm saying, Judge, is when we

12    say "master of the vessel," you know, I have a friend who is

13    president of one of the cruise lines.  So I think of the big

14    cruise ships and being a captain of a cruise ship.  Okay?

15    That's a master of a vessel.  I think of the large vessels we

16    see brought here from other countries bringing goods to the

17    United States or taking goods away from the United States.

18              Now, look at the boat he was on with these three other

19    guys.  That's not a, quote -- I don't even want to call it a

20    vessel.  It looks like a rowboat with a motor on it.  Right?

21    It doesn't even have a cabin.  And there's four guys on that

22    boat, and they are all taking turns driving the boat.  And

23    Mr. Chase knows this.  This is standard procedure with these

24    guys.  They take turns driving the boat.  One guy's got to have

25    the GPS coordinates.  So he had them in his pocket.  But to
```

1   call him the master and he was, you know, the CEO, or whatever

2   Mr. Chase wants to say, it's ignoring the reality.  Look at the

3   boat they were on.

4         It's an open boat.  I mean, there wasn't even a cabin

5   there, Judge, and there's four guys.  Basically, what they are

6   doing is -- and the Colombians have it down to a science.  And

7   they are going to do this for a while now.  They are going to

8   go to these countries, they are going to grab dirt poor people

9   living in huts, give them a few thousand dollars.  And these

10  people are going to -- based on the way they live, they are

11  going to get on the boat.  It's going to happen.

12        So I don't think my client was really any different

13  than anyone else, except apparently he was honest enough to

14  tell the Coast Guard guys:  "I'm the guy in charge of the

15  boat."

16        THE COURT:  Well, in fact, he received an enhancement

17  under the advisory guidelines due to the fact that he was the

18  captain of the vessel and admitted to such.

19        MR. SPIVACK:  Right.  Technically, he is.

20  Technically -- I mean, remember the guidelines, Your Honor, are

21  a mathematical formula.  One plus one plus one equals three.

22  So I can't get up here and say the probation officer shouldn't

23  count those points because he was honest and he said:  "I'm the

24  master of the vessel."  So I get the extra points.  But the

25  reality is -- and again, Mr. Chase knows this -- we've handled

1   enough of these cases.  They are all the same.  They're getting

2   four dirt poor people.  They are throwing them on a boat that

3   they're lucky that the boat even makes it, that they don't die

4   out there on these boats, and they are thrown a few thousands

5   dollars.  And in the meantime, the Colombians are back there

6   laughing with their millions and millions of dollars.  And it's

7   just not right to sentence someone like my client to more than

8   10 years.  We're not talking about 10 months.  We're talking

9   about 10 years.

10          Thank you, Judge.

11          THE COURT:  All right.  Thank you, Mr. Spivack.

12          MR. CHASE:  Judge, can I be heard?

13          THE COURT:  Mr. Chase?

14          MR. CHASE:  Judge, this is not "The Love Boat."  He

15   was the captain, Judge, which is shown by the photographs.  In

16   the most critical moment of the journey, when the Coast Guard

17   helicopter had spotted this vessel, he was the one operating

18   it.  He was the one that operated the boat as a captain, not as

19   Captain Stubing of "The Love Boat," going around making sure

20   everybody's getting their drinks poolside.  He was the one that

21   was driving the vessel, trying to flee and avoid arrest.

22          He was at the helm from the moment all of them, all

23   four of them got done throwing the bales of cocaine,

24   jettisoning them in the ocean, until the time the vessel

25   stopped.  He's not the captain in name.  He was the captain in

```
 1    job.  He was the one that drove the boat at the most critical

 2    moment.  That's the distinguishing factor.  Yes, different crew

 3    members may drive the boats at different times.  But at the

 4    most critical juncture, this defendant was the one operating

 5    the boat.

 6              THE COURT:  All right.

 7              Mr. Spivack, the last word, sir.

 8              MR. SPIVACK:  Yes, Judge.

 9              Mr. Chase says at the most critical point my guy's

10    behind the wheel.  That's because he happened to be behind the

11    wheel.  Mr. Chase would have a point if one of other guys was

12    behind the wheel, they saw the Coast Guard, and that guy stood

13    away and my client took over.  But the fact that my client just

14    happened to be behind the wheel doesn't make him the CEO of

15    this organization, Judge.

16              THE COURT:  All right.  Mr. Colobon, much has been

17    argued with regard to your involvement in this offense.  And

18    let me start by stating that while Mr. Spivack made comments

19    with regard to whether he or Mr. Chase or anyone else could

20    survive, that's not for this Court to consider, whether

21    law-abiding citizens could survive their sentence in prison.

22    The Court's sole responsibility is to determine a just and

23    reasonable sentence that is not more than is necessary to

24    satisfy the goals of sentencing.

25              Here, you were certainly more than a tiny pebble, as
```

1   has been described, and you were not merely a drug mule.  You

2   knew that you were smuggling drugs eventually to make its way

3   into this country.  The fact that you committed this offense

4   for $3,800 or more or less doesn't take away from the

5   commission of the offense.  And I recognize from the

6   photographs that were submitted that the conditions in

7   Esmeraldas, Ecuador are sad.  It's sad.  And the conditions are

8   such that -- that certainly it's compelling for the Court to

9   know that you and your family live there.  However, you were,

10  as you admitted, the master of this vessel.  You were the

11  individual, regardless of the size of this boat, or vessel, or

12  ship.  It looks like a boat.  It's a small vessel.  And it's

13  surprising to this Court how that vessel could hold 755

14  kilograms of cocaine, 1,661 pounds, but it did.

15        And what was most telling that you were the individual

16  that directed, that steered, that controlled, and manipulated

17  this vessel was that you had a paper in your pocket that had

18  the GPS coordinates.

19        So the question for this Court is -- certainly the

20  Court recognizes that you are not safety valve eligible.  The

21  weight is significant in this case.  And what is a just and

22  reasonable sentence to avoid an unwarranted sentencing

23  disparity, promote respect for the law, and serve as an

24  adequate deterrent to you and to others that are situated?

25        When I asked your attorney the difference between the

other individuals that were aboard this vessel, Mr. Espanaruiz,

Mr. Oliva, and Mr. Mendoza Sanchez, the reason I asked that,

sir, is the question for this Court is:  What sentence is

reasonable for an individual that is the master of the vessel,

that controls the direction of this vessel?

THE DEFENDANT:  May I say something?

THE COURT:  Mr. Colobon, in this case, I sentenced one

of the other individuals to 135 months.  I felt that that was a

reasonable sentence.  And as the master of the vessel, I

believe that you bear more responsibility, and the advisory

guidelines reflect that.  They reflect that enhancement due to

your involvement.

So the question is whether a sentence of 210 months is

appropriate in this case and to avoid an unwarranted -- an

unwarranted sentencing disparity between you and others

similarly situated.  The weight is certainly significant to the

Court, but I do believe that a small departure is appropriate.

And that's given that you have no involvement in the criminal

justice system, but that your sentence should be sufficient but

not greater than necessary.

So I thank the parties for their arguments.  After a

consideration of the Presentence Report, which contains the

advisory guidelines, and a full consideration of the statutory

factors of 18, United States Code, Section 3553(a), the Court

believes that a sentence of 180 months will provide sufficient

1  punishment and deterrence.

2          It's the finding of the Court that you are unable to

3  pay a fine.  But Mr. Colobon, it will be the judgment of the

4  Court that you will be committed to the Bureau of Prisons to be

5  imprisoned for a total of 180 months as to Count 1.

6          Upon your release from imprisonment, you shall be

7  placed on supervised release for a term of five years as to

8  Count 1.

9          Within 72 hours of your release, you shall report in

10 person to the probation office in the district where you are

11 released.

12         While on supervised release, you shall comply with all

13 mandatory and standard conditions of supervised release.  And

14 that includes not committing any crimes, being prohibited from

15 possessing a firearm or other dangerous device.  You shall not

16 unlawfully possess a controlled substance, and you shall

17 cooperate in the collection of DNA.

18         You shall also comply with the following special

19 conditions, and that is to surrender to Immigration for removal

20 after you've served your term of imprisonment and a requirement

21 that you pay all unpaid restitution, fines, or special

22 assessments, as noted in Part G of the Presentence Report.

23         You have answered to one count.  You shall immediately

24 pay to the United States a special assessment of $100.

25         Now that the sentence has been imposed, Mr. Colobon,

1    do you or Mr. Spivack object to the Court's findings of fact or

2    manner in which the sentence was pronounced?

3          MR. SPIVACK:  We have one factual objection, Your

4    Honor.

5          THE COURT:  All right.

6          MR. SPIVACK:  And we're all -- we're all proceeding, I

7    believe, under the presumption, the speculation that the drugs

8    eventually would make it to the United States; however, I think

9    there's no evidence that that's actually where they were going.

10   And I know Your Honor mentioned that.  So I have to point that

11   out to the Court and ask the Court:  Now that I've pointed that

12   out to the Court, would that affect the Court's sentence at

13   all?

14         THE COURT:  It wouldn't affect the Court's sentence.

15   Certainly, the commission of this offense is within the

16   jurisdiction of the United States.  Whether the drugs were

17   going to the United States, Cuba, South America, it's not

18   pertinent to the Court for purposes of the sentence to be

19   imposed.

20         What is pertinent to the Court is that Mr. Colobon

21   directed the vessel and was the one that operated the vessel.

22         MR. SPIVACK:  Yes, Your Honor.  Thank you, Judge.

23         No further objections, Your Honor.

24         THE COURT:  Mr. Chase, is there any objection by the

25   Government, sir?

```
 1              MR. CHASE:  No, Your Honor.

 2              THE COURT:  Mr. Colobon, let me advise you that you do

 3     have the right to appeal the sentence imposed.  Any Notice of

 4     Appeal must be filed within 14 days after the entry of the

 5     judgment.  If you're unable to pay the cost of the appeal, you

 6     may apply for leave to appeal in forma pauperis, which means,

 7     sir, there would be no cost to you.

 8              Mr. Colobon, do you have any questions at all, sir?

 9              THE DEFENDANT:  No, thank you.  No.

10              THE COURT:  Mr. Spivack, is there anything further?

11              MR. SPIVACK:  No, Your Honor.  Thank you, Judge.

12              THE COURT:  Mr. Chase, is there anything further?

13              MR. CHASE:  No, Your Honor.

14              THE COURT:  The best of luck to you, sir.

15          (Proceedings concluded at 2:46 p.m.)

16

17

18

19

20

21

22

23

24

25
```

```
 1    UNITED STATES OF AMERICA      )

 2    ss:

 3    SOUTHERN DISTRICT OF FLORIDA  )

 4                    C E R T I F I C A T E

 5           I, Yvette Hernandez, Certified Shorthand Reporter in

 6    and for the United States District Court for the Southern

 7    District of Florida, do hereby certify that I was present at

 8    and reported in machine shorthand the proceedings had the 28th

 9    day of April, 2017, in the above-mentioned court; and that the

10    foregoing transcript is a true, correct, and complete

11    transcript of my stenographic notes.

12           I further certify that this transcript contains pages

13    1 - 24.

14           IN WITNESS WHEREOF, I have hereunto set my hand at

15    Miami, Florida this 30th day of June, 2017.

16

17                         /s/Yvette Hernandez
                           Yvette Hernandez, CSR, RPR, CLR
18                         Certified Shorthand Reporter
                           400 North Miami Avenue, 10-2
19                         Miami, Florida 33128
                           (305) 523-5698
20                         yvette_hernandez@flsd.uscourts.gov

21

22

23

24

25
```